UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

SYLVIA JONES, on behalf of herself        NO.:
and all others similarly situated,
        Plaintiff,

Versus                                    JUDGE

ADMINISTRATORS OF THE TULANE
EDUCATIONAL FUND D/B/A
THE TULANE UNIVERSITY OF LOUISIANA A/K/A
TULANE UNIVERSITY,
        Defendant.               MAGISTRATE-JUDGE
                                 JURY DEMAND

## COMPLAINT

Plaintiff Sylvia Jones ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND D/B/A THE TULANE UNIVERSITY OF LOUISIANA A/K/A TULANE UNIVERSITY ("Tulane"), and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys, and says:

1. Made defendant herein is ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND D/B/A THE TULANE UNIVERSITY OF LOUISIANA A/K/A TULANE UNIVERSITY, a domestic, non-profit corporation and private educational institution located at 300 Gibson Hall, 6823 St. Charles Avenue, New Orleans, Louisiana 70118, which may be served with legal process through its registered agent for service: VICTORIA D. JOHNSON, SUITE 300 GIBSON HALL, 6823 ST. CHARLES AVENUE, NEW ORLEANS, LOUISIANA 70118.

.

# 1. NATURE OF THE CASE

2. Tulane is a prestigious private university in New Orleans, Louisiana, providing higher education in the arts, sciences, business, engineering, architecture, medicine, law, professional advancement, and social work. Plaintiff is a student at Tulane's acclaimed A.B. Freeman School of Business.

3. On March 11, 2020, Tulane announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19").

4. Plaintiff does not dispute that Tulane's decision to cease in-person instruction was warranted. Plaintiff asks merely to be refunded the money she spent for educational services that were not provided.

5. For the Spring 2020 semester, students like Plaintiff paid Tulane thousands of dollars in tuition for each "credit hour" of education (or for a semester of credit hours). By Tulane's published policy, a "credit hour" is "one academic hour (50 min) of contact time each week . . . for the full academic semester, typically fifteen weeks []long," plus an additional thirty to forty-five additional "hours of effort outside the classroom," for graduate students, or fifteen to thirty hours for undergraduate students. Students like Plaintiff pay tens of thousands of dollars in tuition alone for a semester of instruction.

6. Prior to its March 11, 2020 announcement that it would cease in-person instruction, Tulane permitted online education for only some courses in only some schools, and typically charged far less in tuition. For example, for the Spring 2020 semester, Tulane charged undergraduate students in its School of Professional Advancement $2,199 per credit hour for in-person classes, but only $476 per credit hour for online classes – almost a 78.5% reduction.

7. For each credit hour in the Spring 2020 semester, students like Plaintiff received less than half of the promised academic hours of "contact time."

8. Though Tulane could no longer provide the remaining hours of "contact time" instruction per credit hour, Tulane demanded that students pay the full tuition price.

9. Students like Plaintiff also received dramatically less than the promised hours of additional "hours of effort outside the classroom" per credit hour.

10. Similarly, students like Plaintiff paid fees for services and access to facilities and equipment over the full semester. Though Tulane provided these services and facility/equipment access for only part of the semester, and could not provide them for the full semester, Tulane demanded that students pay fees for the entire semester.

11. While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Tulane has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution.

12. Tulane is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities for which they paid that Tulane did not provide.

13. Tulane's online course policy and deeply discounted online course tuition reflects the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational experience promised by Tulane. Access to facilities, materials, laboratories, faculty, student collaboration, and the opportunity for on campus living, school events, dialogue, feedback and critique are essential to the in-person educational experience.

14. For example, before Tulane's March 11 announcement, all of Plaintiff's classes were taught as its "credit hour" policy dictates, with "contact time" of instruction and additional hours of "effort outside the classroom." Following Tulane's March 11 announcement in the Spring 2020 semester, instruction for two of Plaintiff's classes were delivered only in a remote, online format. Instruction for

two of Plaintiff's classes were no longer delivered at all – they were instead provided in a self-study format, one with recorded video and one without.

15. Plaintiff and the putative class contracted and paid for an education, not course credits. They paid for the robust education and full experience of academic life on Tulane's campus; remote online learning cannot provide the same value as in-person education.

16. As a result, Tulane has financially damaged Plaintiff and the putative class members. Plaintiff brings this suit because Plaintiff and the class members did not receive the full value of the services for which they paid. They lost the benefit of their bargain and/or suffered out-of-pocket loss. They are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

17. Plaintiff seeks, for herself and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 and following semesters when Tulane ceased in-person classes, campus services and access to campus facilities, continuing through to such time as Tulane reinstates in-person classes.

## I. JURISDICTION AND VENUE

2. The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Tulane, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Tulane is headquartered in this district.

4. The Court has personal jurisdiction over Tulane because Tulane is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Tulane conducts substantial business in this district.

### III. PARTIES

5.  Plaintiff Sylvia Jones is a citizen and resident of the State of Louisiana. Plaintiff has attended Tulane University since the Fall 2016 semester, seeking a business degree from Tulane's A.B. Freeman School of Business . Plaintiff paid, either directly or through a third party paying on her behalf, $26,380 in tuition for the 2020 Spring semester.

6.  Tulane University is a private research university comprised of ten constituent schools. Tulane had a total enrollment of 8,740 undergraduate students and 5,459 graduate students for the 2019-2020 academic year. Tulane reported it had an endowment of $1.43 billion for the 2019 fiscal year.

7.  Tulane was eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students. Tulane applied for CARES Act funding and received approximately $2.77 million. As of June 5, 2020, Tulane announced that it is distributing this money to some eligible students based on financial need for limited moving, health care, and technology expenses due to COVID-19, but that not every eligible student would receive the estimated average expenses for the disruption of campus operations.

### IV. FACTUAL ALLEGATIONS

**A. Contract Terms**

8.  Plaintiff and Class members entered into a contract with Tulane whereby, in exchange for the payment of tuition, fees and other related costs, Tulane would provide an agreed-upon number of classes through in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

9.  For each credit hour for "courses in lecture format," Tulane promised to provide "one academic hour (50 min) of contact time each week" for the academic semester, as well as additional hours

of work that can be completed "outside the classroom."

10. Tulane also agreed to provide instruction that was accredited by the Southern Association of Colleges and Schools Commission on Colleges ("SACSCOC").

11. As late as January 2020, Tulane agreed to obtain SACSCOC approval for curriculum changes "*either in content or method of delivery,* from those that were offered when Tulane University was last evaluated" by SACSOC.

12. As late as January 2020, Tulane agreed to obtain SACSCOC approval "**prior**" to the modification.

13. As late as January 2020, Tulane admitted that "[f]ailure to comply with SACSCOC's substantive change procedures, could result in Tulane University's loss of Title IV funding, and require Tulane University to reimburse the U.S. Department of Education money received for programs related to the unreported substantive change."

14. Plaintiff accepted Tulane's offer.

15. Plaintiff substantially performed its contractual obligations. Tulane did not.

---

Tulane University Academic Policies (glossary entry for "credit hour"), available at https://catalog.tulane.edu/university/#academicpoliciestext.

**Tulane University Substantive Change Policy (Jan. 2020) (emphasis added),** *available at*

**https://provost.tulane.edu/sites/provost.tulane.edu/files/FINAL%20Substantive%20Change%20Policy%20-%20January%202020.pdf**. *See also* **Academic Policies, Curriculum Effective Date ("Changes approved after the catalog for that academic year is published, cannot be effective until the following academic year."),** *available at* **https://catalog.tulane.edu/university/#academicpoliciestext.**

Tulane University Substantive Change Policy (Jan. 2020) (emphasis in original).

*Id.*

### B. Closure of Campus and Suspension of In-Person Education

16. On March 11, 2020, Tulane announced it was canceling all in-person classes and effectively closed its campus.

17. While Tulane's decision to close campus and end in-person classes was warranted by circumstances, it effectively breached or terminated the contract Tulane had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the Tulane campus.

18. Though all in-person instruction ended on March 13, 2020, some classes were taught in an online format beginning March 23, 2020. Even students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences), Tulane provided either no instruction or only remote, online instruction.

19. As a result of the closure of Tulane's campuses and facilities, Tulane has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative class contracted and paid, either directly or through a third-party on their behalf.

20. Tulane subsequently decided that in the Fall 2020, it would shorten its classes, no longer providing the agreed-upon "one academic hour (50 min) of contact time" for each credit hour. For example, for the Fall 2020 semester, instead of providing 150 minutes of instruction in its three credit hour courses, Tulane provides only 135 minutes (for classes taught Monday, Wednesday, and Friday) or 140 minutes (for classes taught Tuesday and Thursday).

21. Though Plaintiff and members of the Class paid Tulane tuition in exchange for a full semester of in-person education, Tulane ceased to provide the in-person education it promised, and thus has failed to uphold its side of the agreement. Nonetheless, Tulane insists that students uphold their side of the agreement, and refuses to refund tuition and related expenses.

22. In so doing, Tulane is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute

educational experience as the same as or just as good as full participation in the university's academic life.

23. Plaintiff and members of the Class paid Tulane tuition in reliance on its promise of teaching a certain number of courses in an in-person course format and with in-person facility access. Plaintiff did not choose to attend and/or pay tuition for an online institution of higher learning, but instead chose to attend Tulane's institution and enroll on an in-person basis.

C. **Inferiority of Online Educational Experience**

24. At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

    a) Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

    b) Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

    c) Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester; and

    d) Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

25. The move to online-only classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and athletic programs, which provided considerable value to Plaintiff and the Class members.

26. The online learning options Tulane offered for the Spring 2020 and Summer 2020

semesters, though consistent with safety measures, cannot provide the academic and collegiate experience Tulane extols.

### D. Lower Tuition for Online Education

27. In-person education is worth more than online education.

28. Accordingly, the tuition and fees for in-person instruction at Tulane are higher than tuition and fees for its own online classes and for other online institutions. Such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

   a) Face to face interaction with professors, mentors, and peers;

   b) Access to facilities such as libraries, laboratories, computer labs, and study rooms;

   c) Student governance and student unions;

   d) Extra-curricular activities, groups, intramural sports, etc.;

   e) Student art, cultures, and other activities;

   f) Social development and independence;

   g) Hands on learning and experimentation; and

   h) Networking and mentorship opportunities.

29. The fact that Tulane students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in Tulane's in-person, on-campus programs versus Tulane's own online learning program.

30. For example, for the Spring 2020 semester, Tulane charged undergraduate students in its School of Professional Advancement $2,199 per credit hour for in-person classes, but only $476 per credit hour for online classes – almost a 78.5% reduction.

31. As another example, for the Spring 2020 semester, Tulane charged law students $2,716 per credit hour for in-person degrees, but only $1,150 per credit hour for online degrees – almost a 58% reduction.

**E. Damages**

32. Through this lawsuit, Plaintiff seeks for herself and Class members Tulane's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of educational opportunities, the reduced hours of instruction, as well as for each subsequent semester and continuing until Tulane resumes in-person classes. Plaintiff seeks return of these amounts on behalf of herself and the Class as defined below.

33. Plaintiff also seeks damages relating to Tulane's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## V. CLASS ACTION ALLEGATIONS

34. Plaintiff seeks to represent a class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend Tulane University when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

Specifically excluded from the Class are Tulane, Tulane's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

35. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

36. **Numerosity.** The members of the Class are geographically dispersed and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Tulane and

may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Tulane and third-party retailers and vendors.

37. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a) whether Tulane accepted money from Class members in exchange for the promise to provide services;

    b) whether Tulane provided the services for which Class members contracted;

    c) whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Tulane did not provide; and

    d) whether Tulane is liable to Plaintiff and the Class for unjust enrichment.

38. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Tulane's wrongful conduct as set forth herein. Further, there are no defenses available to Tulane that are unique to Plaintiff.

39. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

40. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Tulane. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members

could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

41. In the alternative, the Class may also be certified because:

a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Tulane; and/or

b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c) Tulane has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
**Breach of Contract**

42. Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

43. Plaintiff brings this claim individually and on behalf of the members of the Class against Tulane.

44. Through its student policies, the admission agreement, and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Tulane.

45. As part of the contract, and in exchange for the aforementioned consideration, Tulane promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 semester, and continuing into the 2020-2021 academic year.

46. Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

47. Tulane has failed to provide the contracted-for services but has retained tuition monies paid by Plaintiff and the Class, and refuses to issue a corresponding tuition adjustment.

48. Plaintiff and members of the Class have suffered damage as a direct and proximate result of Tulane's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

49. As a direct and proximate result of Tulane's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Tulane for services that Tulane has failed to deliver.

## COUNT II
## Unjust Enrichment

50. Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

51. Plaintiff brings this claim individually and on behalf of the members of the Class against Tulane, and in the alternative to Count I.

52. Plaintiff and members of the Class conferred a benefit on Tulane in the form of monies paid for tuition, fees, and related expenses in exchange for certain service and promises. This tuition was

intended to cover in-person educational services for the academic semester.

53.     Tulane voluntarily accepted and retained this benefit by accepting payment.

54.     Tulane has retained this benefit even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

55.     The online education services Tulane substituted for the in-person education for which Plaintiff and class members paid has a substantially lesser value, but Tulane has nonetheless retained full payment.

56.     It would be unjust and inequitable for Tulane to retain benefits in excess of the services it provided, and Tulane should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND D/B/A THE TULANE UNIVERSITY OF LOUISIANA A/K/A TULANE UNIVERSITY, as follows:

A.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.      For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D.      For prejudgment interest on all amounts awarded;

E.      For an order of restitution and all other forms of equitable monetary relief;

F.      For injunctive and declaratory relief as the Court may deem proper;

G.      For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and

costs of suit; and

H. All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September _, 2020

Respectfully submitted,

SYLVIA JONES, *on behalf of herself and all others similarly situated.*

By:     */s/Yvette Golan*
Yvette Golan
**THE GOLAN FIRM**
2000 M Street, NW, Suite #750-A
Washington, D.C. 20036
T: (866) 298-4150
F: (928) 441-8250
ygolan@tgfirm.com


/s/ David A. Szwak

By: _____
David A. Szwak, LBR#21157, T.A.*
**BODENHEIMER, JONES & SZWAK, LLC**
416 Travis Street, Ste. 800
Mid South Tower
Shreveport, Louisiana 71101
[318]  424-1400
FAX   221-6555
* Admitted in this District since 1991.

James A. Francis*
John Soumilas*
David A. Searles*
Edward H. Skipton*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
eskipton@consumerlawfirm.com

**Pro hac vice* forthcoming

*Attorneys for Plaintiff*